## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BENAHDAM HURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| JAMES P. CORCORAN, in his official | ) | |
| Capacity as Director of Elgin Mental | ) | |
| Health Center, ELGIN MENTAL HEALTH | ) | |
| CENTER, a body public, ILLINOIS | ) | |
| DEPARTMENT OF HUMAN SERVICES, | ) | **JURY DEMAND** |
| a Department of the State of Illinois, | ) | |
| HASINA JAVED, individually, FAIZAL | ) | |
| KAREEMI, individually, CHRISTY | ) | |
| LENHARDT, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT
## WITH REQUEST FOR TRIAL BY JURY

Now comes the Plaintiff, Benahdam Hurt, by and through his attorneys, the Law Offices of Kretchmar and Cecala, PC, with his complaint against the above-named Defendants and requests trial by jury, and in support of his Complaint states as follows.

### I.      INTRODUCTION

This is an action brought by Benahdam Hurt, a person previously confined to the Elgin Mental Health Center ("Facility"), to vindicate profound deprivations of his constitutional rights caused by institutionally based brutality.

### A. Background Factual Information: Sexual Assault, Battery, Sexual Abuse of a Disabled Person and Rape.

1.     From August 14, 2014, until July 22, 2017, Plaintiff was an involuntary patient at Defendant Facility. Plaintiff was found Not Guilty By Reason of Insanity ("NGRI") after being charged with Aggravated Battery on a Police Officer and was subsequently committed as being in need of mental health services on an inpatient basis.

2.     During the entire time of Plaintiff's commitment, he was assigned to the Forensic Treatment Program, and housed on the K and L clinical units at Defendant Facility.

3.     Pursuant to the Illinois Mental Health and Developmental Disabilities Code, 405 ILCS 5/5-100 et seq., a clinical treatment team was assigned the task of formulating and periodically reviewing a treatment plan to improve Plaintiff's mental condition sufficiently so that he could be released back into the community without creating any danger to himself or others due to any alleged mental illness.

4.     The licensed Social Worker who administered the business of Plaintiff's treatment plan, and who was essentially the individual responsible for guiding, recording, overseeing and documenting the Plaintiff's treatment team while he was on "L" unit at Defendant Facility was Defendant Christy Lenhardt.

5.     The licensed Social Worker who administered the business Plaintiff's treatment plan and team while he was on K unit at Defendant Facility was Drew Beck.

6.     From the first day that Plaintiff arrived at Defendant Facility, Defendant Lenhardt commenced her scheme to sexually assault, manipulate and rape the Plaintiff by making sexually charged overtures toward the Plaintiff saying; "You're a really handsome man."

outside the presence of the other Defendant Facility staff.

7.     Over the next days and weeks, Plaintiff met with Defendant Lenhardt at least once a week for counseling as her patient.

8.     Under the ruse of medical care and for no other clinical purpose, Defendant Lenhardt began communication with the Plaintiff to obtain information into his past to manipulate the Plaintiff into sexual intercourse and other sex acts.

9.     Defendant Lenhardt furthered her manipulation and scheme to engage in illicit sex with the Plaintiff by sharing intimate details about her life such as the allegation that she felt insecure about her looks and whether people liked her.

10.     Defendant Lenhardt used her scheme and manipulation, acting under the auspices of her official capacity and role as Social Worker and therapist, to justify her scheme and to create a dynamic which quickly became one whereby the Plaintiff and Defendant Lenhardt appeared to support each other emotionally as though this was the way therapy was supposed to be conducted, however, Defendant Lenhardt's actions were for the purpose of manipulation in order to get the Plaintiff to have sex with Defendant Lenhardt.

11.     On or about Thanksgiving, 2014, Plaintiff was in Defendant Lenhardt's office for counseling when she told him she wanted to kiss him. Plaintiff said that Defendant Lenhardt would have to make her sexual advances deliberate and obvious because Plaintiff was in fear that a sexual advance by the Plaintiff during therapy would be grounds for punishment or other trouble for the Plaintiff. Defendant Lenhardt moved close to the Plaintiff and began to kiss him and arouse him sexually. After several months of sexual assault and only after Defendant Lenhardt acted to commence unlawful sexual touching, battery and harmful sexual contact with the Plaintiff did her scheme to seduce the Plaintiff into illicit sexual acts

commence in full and only after Defendant Lenhardt's "first move" created the event wherein the Plaintiff then began to suggest increased sexual acts such as suggesting "Why don't you show me your boobs or something?" whereby Defendant Lenhardt unbuttoned her shirt and exposed her naked breasts to the Plaintiff. The first sexual episode ended due to the fact that the Plaintiff, not Defendant Lenhardt, became nervous and uncomfortable with the assault caused by Defendant Lenhardt and thereafter Plaintiff left Defendant Lenhardt's office.

12.   Shortly after the first sexual assault, Defendant Lenhardt seduced the Plaintiff in her office many times committing similar seductive and manipulative sexual overtures toward the Plaintiff against his liberty and all while under the control of the Plaintiff in her official capacity as the Plaintiff's Social Worker "in charge" of the Plaintiff's progression and care. Defendant Lenhardt strongly "came on" to the Plaintiff so as to make her willful and wanton sexual assault into sexual battery, unlawfully touching and engaging in sex acts with the Plaintiff who was confined, imprisoned and under her complete control. Defendant Lenhardt whereby she persuaded the Plaintiff to engage in sex acts in her office and the Defendant falsely reported after the first sex act that "she had never done that before" to forward the purpose of exercising control of the Plaintiff and to continue her control, abusive sexual conduct and manipulation of the Plaintiff to make it appear to the Plaintiff as if Defendant Lenhardt was carrying on a romantic, loving, intimate relationship with the Plaintiff.

13.   Defendant Lenhardt later admitted to the Plaintiff that she had engaged in similar sexual misconduct with at least two different Facility patients previously.

14.   Defendant Lenhardt admitted to having had an illicit sexual relationship with

former Facility patient Angelo Rotunno between 2002 and 2006. Rotunno was arraigned in 2002 on a charge of aggravated kidnapping of a child under 13. Rather than face a prison sentence for his criminal sexual offenses committed against children, Rotunno entered a plea of not guilty by reason of insanity ("NGRI") and on Aug. 21, 2002, he was found not guilty by reason of insanity and ordered to undergo inpatient mental health treatment at the Facility. Rotunno mysteriously escaped from the Facility on Friday, February 24, 2006 and he remains a fugitive at this time.

15.   Defendant Lenhardt admitted to engaging in similar sexual assault and battery with Facility patient Mansoor Abdul-Hameed. Defendant Lenhardt used this illicit sexual misconduct with Facility patient Abdul-Hameed and the child molesting fugitive Rotunno to compare her illicit sexual assault and battery with the sex acts of the Plaintiff and she suggested that she preferred sex with the Plaintiff alleging that "she had never gone as far with either of them as she did with" Plaintiff and then Defendant Lenhardt went into graphic detail of her sex acts with other patients by insisting that "she had never actually enjoyed giving blowjobs with anyone" before the Plaintiff.

16.   Defendant Lenhardt admitted to the Plaintiff that she helped the fugitive, child molester Rotunno escape from the Facility.

17.   Defendant Lenhardt gave specific details of her activities in helping the fugitive, child molester Rotunno to escape when she reported that she had "given him [Rotunno] her car keys, told him to go hide in her car, and then driven him to the airport during a break, so he could catch a plane to Europe" where it is likely that the fugitive escaped to and is now at large.

18.   Defendant Lenhardt carried on her illicit sexual misconduct with the Plaintiff until

his release in July 2017. During that time, Defendant Lenhardt used cash payments, electronic devices and other material gifts to the Plaintiff to maintain control of the Plaintiff to continue to rape and coerce the Plaintiff into sexual acts.

19.   Defendant Lenhardt openly discussed other patient cases with the Plaintiff and allowed the Plaintiff to have unfettered access to the records and files of other patients whenever Plaintiff was in her office and at other times when the Plaintiff and Defendant Lenhardt were in close quarters. There were approximately 9 patients on her caseload. Defendant Lenhardt allowed for this illegal sharing of patient information to continue her scheme of "intimacy" with the Plaintiff all as part of her desire to keep the Plaintiff occupied at the Defendant Facility as her sex slave.

20.   Occasionally, Defendant Lenhardt would ask the Plaintiff's opinion about other patient's progress or treatment, as though the Plaintiff was her social worker assistant, as a tactic of flattery, serving her purpose to psychologically control Plaintiff to keep him from seeking release from the Facility and to remain under her control to continue her sexually abusive conduct.

21.   Defendant Lenhardt continued to send gifts and packages to the Plaintiff after his release in July 2017 and he received several packages at his home home in the hope that the Plaintiff would keep silent regarding Defendant Lenhardt's sexual misconduct.

22.   Defendant Lenhardt and Plaintiff were "caught" during sex acts numerous times by other Facility staff.

23.   One incident occurred in the spring of 2017, while in Facility staff member Bob Hamlin's office on K unit. Defendant Lenhardt came over from L unit and the Plaintiff was able to suggest that they use Hamlin's office to have sexual intercourse. Plaintiff and

Defendant Lenhardt went into Hamlin's office and closed the door behind them. Defendant Lenhardt performed oral sex on the Plaintiff and, immediately afterward, Hamlin's office door was locked shut and Plaintiff and Defendant Lenhardt could not open it due to a broken doorknob locking mechanism. The door was in close proximity to the L Unit nursing station and Plaintiff was able to get the attention of two staff who were in the L Unit. A Facility security therapy aid ("STA") named Monica and a nurse named Jerry came to Hamlin's office to help open the door. The STA and nurse opened the door. Defendant Lenhardt and Plaintiff faced the STA and nurse as well as other unidentified Facility staff asking questions about why they had been in Hamlin's empty office alone but no follow-on investigation or other consequence occurred as a result of this incident. This, and other similar "close call" incidents were ignored, covered up or otherwise "swept under the rug" by Defendant Lenhardt and the other Defendants.

24.    Drew Beck (Facility staff Social Worker in K Unit) was the Plaintiff's "in charge" social worker subsequent to Defendant Lenhardt and he asked the Plaintiff several times why Defendant Lenhardt and Plaintiff were "so close" implicating his knowledge of the ongoing sexual misconduct.

25.    Defendant Lenhardt told the Plaintiff, as early as December 2016, that "The Administration is investigating. They suspect us." Similar observations and usually very casual questions were asked by Defendant Javed and Defendant Kareemi, both of whom were the Plaintiff's treating psychiatrists on K Unit. Again, incidents of obvious "sightings" of the Plaintiff and Defendant Lenhardt in compromising situations were ignored, covered up or otherwise "swept under the rug" by Defendant Javed, Defendant Kareemi and the other Defendants.

26.    During early 2017, Drew Beck was out on leave and Defendant Lenhardt would come over every day from L Unit and would have sex with the Plaintiff in his room without fear that other staff would catch her. A Facility security camera in the hallway would have recorded her arrival every day at about 2:30PM. Again, evidence from the security camera proving the almost daily entry to the Plaintiff's room for no other purpose than to permit the Defendant Lenhardt to carry on her sexual enslavement of Plaintiff was ignored, covered up or otherwise "swept under the rug" by Defendant Javed, Defendant Kareemi and the other Defendants. Defendant Javed, Defendant Kareemi and the other Defendants were complicit in the sexually perverse relationship between Defendant Lenhardt and the Plaintiff and acquiesced to allow the sexual misconduct to continue and to falsely continue the Plaintiff's confinement and fail to recommend his release to cover up the use of sexual force and continue "treatment" of the Plaintiff even though Plaintiff was no longer in need of confinement at the Facility.

27.    Defendant Lenhardt used her smart phone (or computer) to set up an email account for the Plaintiff and she would write to the Plaintiff on this email account after the Defendant Lenhardt left work in the evenings and then let Plaintiff use her phone to read the messages when she returned to work the next day. The Plaintiff has dozens of such emails in which the Defendant Lenhardt sent illicit pictures of herself nude, in the bathtub or standing in front of the mirror with sexually charged and suggestive language. After his release in July 2017, and after he was no longer under the slave-like sexual control and manipulation of the Defendant Lenhardt, the Plaintiff was able to begin to recognize the damage from the Defendant's willful and wanton rape, battery and sexual manipulation of the Plaintiff and begin to free himself from this unwanted, manipulative and destructive sexual suppression

caused by Defendant Lenhardt, Defendant Javed, Defendant Kareemi and the other Defendants and exacerbated by the Defendant Facility.

28. In the spring of 2017, as the Plaintiff approached his mandatory release date, the Plaintiff recorded conversations with Defendant Lenhardt and he saved those audio files on electronic devises he owned while confined in the Facility.

29. Sometime during late June or early July 2017, many security personnel conducted a thorough search of Plaintiff's room. All computers, flash drives, iPods and other electronic gadgets were confiscated during a mysterious investigation. No explanation was ever provided to the Plaintiff regarding this unlawful search and seizure of the Plaintiff's property.

30. The Plaintiff had four or five flash drives and one or two iPods seized during the "investigation".

31. The Plaintiff never received a written restriction of rights, accusation of wrongdoing or other process under which his property would have been lawfully searched or seized nor has he ever been provided with an inventory for these possessions and they were never returned to the Plaintiff.

32. Almost immediately following this search, Plaintiff was restricted to the K Unit, denied all phone use and kept quiet, sequestered from others in the Facility, until Plaintiff was released on July 22, 2017.

33. On information and belief, the Plaintiff's digital files became evidence against Defendant Lenhardt which resulted in Defendant Lenhardt being fired from the Facility in July 2017 and the evidence of her sexually deviant actions with the Plaintiff caused the Illinois State Police to arrive at the Facility for the purpose of an interrogation of the Plaintiff.

34.   In July 2017, the Illinois State Police questioned the Plaintiff, without counsel, while the Plaintiff was restricted within the Facility.

35.   The Plaintiff was intimidated, appeared to be implicated in "wrongdoing" and the police were proceeding with questions as though Plaintiff was in "trouble for committing some crime."

## II.      JURISDICTION AND VENUE

36.   This action arises under the Constitution and laws of the United States, including Article III, Section 1of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C.§ 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

37.   This case is instituted in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## III.  PARTIES

38.   At all times relevant hereto, Plaintiff, Benahdam Hurt, was a resident of the State of Illinois and a citizen of the United States of America.

39.   At all times relevant hereto, Defendant Christy Lenhardt was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as a social worker and officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility.  Defendant Christy Lenhardt is sued individually.

40.   At all times relevant hereto, Defendant HASINA JAVED was a citizen of the

United States and a resident of the State of Illinois and was acting under color of state law in his capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant HASINA JAVED is sued individually.

41.     At all times relevant hereto, Defendant FAIZAL KAREEMI was a citizen of the United States and a resident of the State of Illinois and was acting under color of state law in her capacity as an officer employed by Defendant Illinois Department of Human Services and/or of the Defendant Facility. Defendant FAIZAL KAREEMI is sued individually.

42.     Defendants Illinois Department of Human Services ("Defendant State") and Elgin Mental Health Center ("Facility" or "State Facility") are Illinois body publics and legal entities responsible for themselves and for the Elgin Mental Health Center. These Defendants employ the individual Defendants and are proper entities to be sued under 42 U.S.C. § 1983.

43.     At all times relevant hereto, Defendant James Corcoran was a citizen of the United States and a resident of the State of Illinois. Defendant James Corcoran is sued in his official capacity as the Chief of the Elgin Mental Health Center, employed by the Defendant Illinois Department of Human Services and/or the Elgin Mental Health Center, and was acting under color of state law. Defendant James Corcoran is also sued individually.

44.     As the Chief Psychiatrist of the Elgin Mental Health Center, Defendant James Corcoran both exercised and delegated his final decision-making power to the staff and the individual Defendants of the Elgin Mental Health Center. On information and belief,

he also trained and supervised individual Defendants.

45.    Defendant State and Defendant Facility/State Facility and Defendant James Corcoran are properly sued directly under 42 U.S.C. § 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries.

46.    The Defendant State and Defendant Facility are also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant James Corcoran in his official capacity as the Chief Psychiatrist of the Elgin Mental Health Center, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

## IV. DEFENDANTS' DELIBERATE AND COMPLICIT ACTIONS UNDER COLOR OF LAW VIOLATED PLAINTIFF'S RIGHTS, CAUSED SEXUAL ABUSE OF THE DISABLED AND RAPE

47.    Plaintiff was under the control of Defendants' and each of them during and at all times described of in this Complaint.

48.    At all times during these incidents, Plaintiff was an unarmed, defenseless male with little or no sexual experience and was a disabled person who was no match for the trained and sophisticated Defendants.

49.    All of the above-described acts were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiff's federally protected rights, and were done pursuant to the preexisting and ongoing

deliberately indifferent official custom, practice, decision, policy, training, and supervision of the Defendant State and Defendant James Corcoran acting under color of state law.

50.   With deliberate indifference to the rights of citizens to be free from excessive force, the Defendant State and Defendant James Corcoran have ongoingly ordered, encouraged, tolerated, ratified, and acquiesced to a dangerous environment of patient brutality, rape, sexual misconduct, assault, battery and sexual assault on a disabled person by:

> a.   failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of force, false imprisonment and unlawful sex with Facility patients;

> b.   by failing to adequately punish unconstitutional uses of force and unlawful sex with Facility patients;

> c.   by ordering and tolerating the use of unconstitutional force, false imprisonment and unlawful sex with Facility patients;

> d.   by ongoingly failing to properly or neutrally investigate complaints of excessive force, false imprisonment and unlawful sex with Facility patients; and,

> e.   by ordering, tolerating, encouraging, and permitting collusive statements among the Facility staff and the police in such situations.

51.   It is the longstanding, widespread, deliberately indifferent custom, habit, practice and/or policy of the Defendant State, Defendant James Corcoran and the Defendant Facility to order and permit staff members to use excessive force, battery and unlawful sexual acts against individuals when such sexual activity and perversion is unnecessary and unjustified, as well as to fail to supervise and to train staff in the appropriate constitutional limits on rape, sexual misconduct and perverted sexual activity,

knowing that these staff members are significant to the protection of the constitutional rights of the patients and therefore pose a significant risk of injury to the public who are patients at the Defendant Facility.

52.     With deliberate indifference to the rights of citizens to be free from excessive force in the care and treatment received at Defendant Facility, the Defendant State and Defendant James Corcoran have ongoingly ordered, encouraged, tolerated, ratified, and acquiesced to unconstitutional and abusive uses of force and sexual misconduct under the auspices of "mental health treatment" by:

> a.      failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from force and sexual misconduct in mental health facilities;

> b.      failing to adequately punish rape and sexual misconduct actions of the Facility staff;

> c.   ongoingly ordering and tolerating unlawful rape, sexual misconduct, force, and manipulation-based selective treatment among the staff and in decisions regarding the ongoing incarceration of those found Not Guilty by Reason of Insanity; and

> d.      failing to properly investigate complaints of unlawful sexual misconduct, rape, and toleration of collusive statements by involved staff in such situations.

53.     It is the longstanding, widespread, deliberately indifferent custom, habit, practice and/or policy of the Defendant State, Defendant James Corcoran and Defendant Facility to order as well as permit staff to use force, sexual misconduct and rape as motivating factors in staff decisions and actions, as well as to fail to supervise and to train staff in the rights of citizens to be free from unconstitutional, violent actions and collusive decision making by facility staff.

54.     With deliberate indifference to the rights of citizens to be free from loss of

liberty and seizure of property and persons, as well as keeping, prolonging incarceration and imprisonment of Facility patients for the purpose of sexual pleasure, rape, sexual misconduct and to prevent Facility patients from exercising their constitutional rights, the Defendant State and Defendant James Corcoran have ongoingly ordered, encouraged, tolerated, ratified, and acquiesced to a dangerous environment of tolerating sexual slavery preventing Facility patients from the exercise of such Constitutional rights by:

    a. failing to conduct sufficient training or supervision with respect to the due process rights of citizens to be free from unlawful imprisonment, extended incarceration under the false auspices of "mental health treatment" only for the sexual enslavement of the patient;

    b. failing to adequately punish the staff who are engaging in sex acts, rape and sexual misconduct with disabled patients at the facility and who are prevented from exercising their due process rights to be released from the Defendant Facility or otherwise object to sexual misconduct of the staff;

    c. ongoingly failing to properly investigate complaints of sexual misconduct and due process violations against Facility patients exercising their constitutional rights.

55. It is the longstanding, widespread, deliberately indifferent custom, habit practice and/or policy of the Defendant State, Defendant James Corcoran and the Defendant Facility to order and permit staff members to engage in sexual acts with patients and disabled persons, as well as to fail to supervise and to train staff in the constitutional rights of individuals.

56. With deliberate indifference to the rights of citizens to be free from excessive use of force and sexual misconduct, the Defendant State and Defendant James Corcoran have ongoingly ordered, encouraged, tolerated, ratified, and acquiesced to the excessive force and rape, sexual misconduct and sex with disabled patients and cover up of efforts by staff to report these incidents when Defendants have failed to investigate complaints

of staff misconduct.

57.     It is the longstanding and widespread custom, habit, practice and/or policy of the Defendant State, Defendant James Corcoran and Facility to find no fault with staff conduct as long as any story is offered by staff, regardless of how incredible.

58.     Defendant James Corcoran orders the senior staff to routinely ratify, acquiesce, rubber stamp, and tolerate the malicious collusive conduct and unconstitutional actions of staff by routinely ignoring serious complaints of sexual misconduct and other violent sexual acts on the Facility patients, as well as fabrication of evidence by the staff. The Defendants State and Defendant James Corcoran did exactly that in this case.

59.     These final policy decisions by Defendant James Corcoran in his role as the final delegated policy decision maker with respect to reviewing misconduct create liability for Defendant State and Defendant James Corcoran. They are also further evidence of the ongoing and deliberately indifferent custom, habit, policy, decision, practice, training and supervision of the staff of the Defendant Facility, wherein the Defendant State and Defendant James Corcoran order, tolerate and encourage lawlessness and disregard for the federal rights of patients.

60.     In the period addressed by this Complaint, and before and since the events described herein, Defendant James Corcoran has declared or suggested that other complaints of sexual misconduct involving excessive force and unlawful sex with disabled patients and outrageous actions by staff were unfounded, without serious investigation, and he has provided cover-up support to members of the staff who

were violating the constitutional and statutory rights of patients.

61.     As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff has been substantially injured. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, physical and mental impairments, great pain and emotional distress, and/or aggravation of pre-existing conditions, and ongoing special damages for medically/psychologically related treatment caused by the unconstitutional and brutal concerted conduct of all these Defendants.

62.     The Plaintiff is now suffering from these injuries, with an inability to consistently live a normal life free from the rape, sexual manipulation and control of the Defendant Lenhardt and from the very staff charged with the responsibility to enable his treatment or rehabilitation.

63.     The Plaintiff also suffers persisting emotional damage the extent of which has not yet been fully ascertained. Plaintiff continues to suffer ongoing emotional distress, with significant stress related symptoms.

64.     Plaintiff is also entitled to punitive damages on all of his claims against the individual Defendants personally, to redress their willful, malicious, wanton, reckless and fraudulent conduct.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 - Excessive Force, Unlawful Search, Seizure and False Imprisonment in violation of the Forth and Fourteenth Amendment

65.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth at length herein.

66.     Relevant portions of 42 U.S.C. § 1983 provide that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

67.     Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

68.     All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as staff of the State and/or Defendant Facility and their acts or omissions were conducted within the scope of their official duties or employment.

69.     At all times complained of herein, Plaintiff had a clearly established constitutional right under the Forth and Fourteenth Amendments to bodily integrity and to be free from excessive force, assault, battery, sexual misconduct and rape by the staff of the State.

70.     At all times complained of herein, Plaintiff had a clearly established constitutional right under the Forth and Fourteenth Amendments to bodily integrity and to be free from unlawful searches, seizures of his property and imprisonment under false allegations, lies or trickery by the staff of the State.

71.     Any reasonable person knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

72.     The actions, deception and enslavement as well as the use of force by Defendant Lenhardt, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The force and failure to protect the Plaintiff's constitutional rights, and the use of unlawful excessive force, assault, battery, sexual misconduct and rape by the Defendant violated the Forth and Fourteenth Amendment rights of Plaintiff. Defendant Lenhardt used deception and other trickery involving the sexual enslavement of the Plaintiff to falsely imprison Plaintiff and prolong his incarceration without justification and only to satisfy her sexual perversion.

73.     The force used constituted excessive force, assault, battery, sexual misconduct and rape in that it could have caused and did cause serious injury to the Plaintiff.

74.     None of the Defendants took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force, assault, battery, sexual misconduct and rape of Defendant Lenhardt or from the continuing excessive force, assault, battery, sexual misconduct and rape prolonging the Plaintiff's imprisonment despite being in a position to do so. The Defendants are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force and other constitutional violations caused by each other Defendant.

75.     Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

76.     Defendants did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

77.     The actions of the Defendants, and each of them, in the context and circumstances where the Plaintiff represented no threat of harm to himself, other patients or staff violates the contemporary standards of decency and at no time was the Plaintiff's imprisonment necessitated by his own conduct but only due to the misconduct and violations of his rights by the Defendants.

78.     The Defendants, and each of them, conducted a malicious and sadistic use of force to cause harm to the Plaintiff by forcing him to submit to excessive force, assault, battery, sexual misconduct and rape which constituted an unlawful bodily touching and stripping away his dignity and humanity by submitting to a female staff member under whom the Plaintiff's freedom and wellbeing were solely and completely under her control and that such actions violate contemporary standards of decency, regardless of whether or not significant injury is evident.  The Defendants used force in a willful, wanton and unnecessary fashion as there was no need for sex at any time or under any circumstance nor was any force, assault, battery, sexual activity and/or rape appropriate for a trained, responsible staff member.

79.     The Defendants' excessive force, assault, battery, sexual misconduct and rape exceeded any reasonable use of force as no force was required whatsoever.  The use of force involving the sexual enslavement of the Plaintiff constitutes force, assault, battery, sexual activity and/or rape, seizure and imprisonment of the Plaintiff where such a use of force so repugnant as to shock the conscience of mankind.

80.     The acts or omissions of all individual Defendants were the direct and proximate causes behind Plaintiff's injuries.

81.     These individual Defendants acted in concert and joint action with each other.

82.     The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

83.     These individual Defendants are not entitled to qualified immunity for the complained of conduct.

84.     The Defendants to this claim, at all times relevant hereto, were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

85.     As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts in excess of the jurisdictional limit.

86.     On information and belief, Plaintiff may suffer lost abilities to recover and may further suffer physical and emotional pain from ongoing and continued loss of society through the prolonged false incarceration and other sexual abuses outlined herein.

87.      Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

88.     In addition to compensatory, economic and consequential damages, Plaintiff is entitled to punitive damages against each of the individually named

Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**SECOND CLAIM FOR RELIEF:**
**Violation of 42 U.S.C. § 1983 –Direct Orders and Deliberately**
**Indifferent Policies, Practices, Customs, Training, and**
**Supervision in violation of the Fourteenth and First Amendments**

89.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

90.     42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

91.     Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

92.     The Defendants to this claim at all times relevant hereto were acting under the color of state law.

93.     Plaintiff had the following clearly established rights at the time of the complained of conduct:

> 1. the right to bodily integrity and to be free from excessive force, unlawful search, seizure and imprisonment by State's staff under the Forth and Fourteenth Amendments;

> 2. the right to due process of law without interference with his liberty interests and constitutional rights under the Fourteenth Amendment;

94.     Defendant James Corcoran, Defendant Facility and Defendant State knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

95.     The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

96.     Defendants are not entitled to qualified immunity for the complained of conduct.

97.     Defendant James Corcoran, Defendant Facility and Defendant State were, at all times relevant, policymakers for the Defendant Facility, Defendant State and Defendant Facility, and in that capacity established policies, procedures, customs, and/or practices for the same and gave direct orders to violate the Plaintiff's rights in this case.

98.     These Defendants ordered and committed the actions, developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were direct and proximate causes behind the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, all of which resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

99.     Defendant James Corcoran, Defendant Facility and the Defendant State have ordered, created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, institution-wide customs, punishment and enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its staff in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

100.     In light of the duties and responsibilities of those staff that participate in controlling the behavior of recipients of services and preparation of reports on alleged sexual misconduct, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

101.     The unlawful orders and deliberately indifferent training and supervision provided by Defendant State, Defendant Facility and Defendant James Corcoran resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant State, Defendant Facility and Defendant James Corcoran and were direct and proximate causes in the constitutional and federal violation injuries complained of by Plaintiff.

102.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, continues to suffer present adverse effects and deprivations of his rights, and reasonably fears that she will suffer the same adverse effects in the future, thereby entitling him to injunctive relief and orders of the Court prohibiting contact from the Defendants.

103.     Plaintiff continues to suffer loss of opportunity and ability to recover and will further suffer physical and emotional pain from ongoing and continued loss of society from the prolonged incarceration and failure to report the misconduct or other false reports used to cover-up Defendants' use of excessive force and unlawful sexual misconduct. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

104.    Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42

U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference

in policies, practices, habits, customs, usages, training and supervision with respect to the

rights described herein, and with respect to the ongoing policy and/or practice of the

State in failing to investigate or appropriately handle complaints of the same, which

Defendants have no intention for voluntarily correcting despite obvious need and

requests for such correction.

## VI.    PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of

the Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial and in excess of the jurisdictional limit;

B. economic losses on all claims allowed by law;

C. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial and in excess of the jurisdictional limit;

D. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

E. pre- and post-judgment interest at the lawful rate;

F. Court ordered equitable and injunctive relief from any contact or communication from the Defendants including further sexual advances, assaults or other seductive sexual communication from the Defendants; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

  /s/ S. Randolph Kretchmar
S. Randolph Kretchmar
One of the Attorneys for Plaintiff

Law Offices of Kretchmar and Cecala, PC.
1170 Michigan Avenue
Wilmette, IL 60091
847-370-5410
s_randolph@earthlink.net
jcecala@expansionfunding.com