**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Benahdam Hurt, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case no. 1:17-cv-7909 |
| | ) |
| v. | ) |
| | ) Honorable Rebecca R. Pallmeyer |
| James P. Corcoran, *et al.,* | ) |
| | ) |
| Defendants. | ) |

**DR. JOANNE LANGLEY'S RESPONSE TO PLAINTIFF'S "MOTION TO COMPEL DR. JOANNE LANGLEY TO ANSWER DEPOSITION QUESTIONS IN WRITING, AND FOR FEES SANCTIONS [*SIC*]" [209]**

The subpoena respondent, Joanne Langley, Psy.D., by and through her attorney, Kwame Raoul, the Attorney General of Illinois, hereby responds to Plaintiff's "Motion to Compel Dr. Joanne Langley to Answer Deposition Questions in Writing, and for Fees Sanctions [*sic*]" ("Motion to Compel") and in support thereof states as follows:

**INTRODUCTION**

During this Court's July 6 hearing on Plaintiff's "Emergency" Motion to Compel, Plaintiff's counsel represented to this Court on the record that he was not interested in what Dr. Langley, personally, experienced <u>except</u> (1) whether she made a complaint about Brian Dawson and, if so, (2) when she made that complaint. Rather than keep to his word, counsel asked Dr. Langley if Mr. Dawson committed any "misconduct" with Dr. Langley. (Dep. of Langley, 35:4-17, ECF No. 209-1) And, rather than accept the Court's instruction to call chambers during the deposition to rule on any deposition issues,[1] Plaintiff's counsel stated he did not want to ask any more questions about the topic. Undersigned counsel urged Plaintiff's counsel to bring this issue

---

[1] (Tr. of Proceedings, 26:6-10, 27:13-16, July 6, 2022, ECF No. 203); (Minute Entry, July 7, 2022, ECF No. 202.)

to the Court's attention by telephone, but he declined. (Dep. of Langley, 37:21-23.) Instead, Counsel remained mute, disregarded his Rule 37.2 obligations, and filed this motion to compel answers to questions that Dr. Langley has never heard, and to sanction Dr. Langley's counsel personally. Because (1) Plaintiff's counsel failed to certify any meet-and-confer effort under Rule 37.2 and (2) failed to call this Court per its instruction on July 6 and 7, the Motion must be denied outright. But even if this Court were to consider the merits of the Motion, it fails because (3) Plaintiff's counsel violated this Court's July 6 oral pronouncement not to ask the very question raised during the deposition, and Dr. Langley was substantially justified in refusing to answer it. Additionally, (4) Dr. Langley would have proposed three different questions that she would answer, but was not given the opportunity because Plaintiff filed this motion without conferring under Rule 37.2. Accordingly, Plaintiff's Motion to Compel must be denied.

## BACKGROUND

On July 6, 2022, Plaintiff's counsel represented on the record as an officer of the Court that counsel's questions relating to Brian Dawson would be limited to whether Dr. Langley had ever made a "complaint" about Mr. Dawson and, if so, when that complaint was made. (*E.g.*, Tr. of Proceedings, 22:8-12, 23:7-16, 24:11-13, July 6, 2022, ECF No. 203) (focus of inquiry of Dr. Langley as to Brian Dawson is on whether Dawson's alleged misconduct was "known before" by Defendants, "when it took place to impute knowledge," "when this was found out," "It's about the timing"). Counsel stated, "We don't need to know what happens to her." (*Id.* at 23:8-9.) This Court accepted those representations, stating "plaintiff's counsel . . . doesn't intend to ask any details about what happened to her or what her complaints may have been," and "he is not going to ask about her personal experiences in the workplace," rather he will ask "Did you make a complaint about this individual?" (*Id.*, 26:16-21, 27:2-4, 28:6-7.)

On July 6 and in a subsequent minute entry, this Court specifically directed the attorneys to call chambers if "counsel oversteps" and the Court will "take it up at that point about whether a question is or is not appropriate to be asked" and "if you have concerns or questions, you are welcome to contact chambers." (Tr. of Proceedings, 26:6-10, 27:13-16, July 6, 2022, ECF No. 203). This Court memorialized that oral instruction on July 7, 2022. (*See* Minute Entry, July 7, 2022, ECF No. 202.)

However, Plaintiff's counsel did not bother to follow this Court's order to resolve the dispute then-and-there. During Dr. Langley's deposition on July 8, Dr. Langley answered a principal question that Plaintiff's counsel told this Court he needed to ask: "Did you ever file some formal complaint for some misconduct that Brian Dawson had committed?" Dr. Langley answered "No." (Dep. of Langley, 34:17-22, ECF No. 209-1) (emphasis added.) Plaintiff's counsel on July 8, 2022, berated Dr. Langley with the following invasive question about her personal workplace experience that counsel represented he would not ask:

```
           THE WITNESS:  I was aware that
Mr. Dawson -- What I had heard -- this is all what
I had heard through other sources, other people --
was that Mr. Dawson was allowed to retire for
misconduct.  Some of it was -- What I was told,
some of it was interpersonal, some of it was
financial.
BY MR. CECALA:
      Q    Okay.  Did any of that misconduct,
without giving me details, involve you?
           MR. ROBBIN:  Objection, this may
violate the court's protective order.
      Dr. Langley, I am going to instruct you
not to answer.
```

At this point, undersigned counsel urged Plaintiff's counsel "to call chambers, if you had any concerns," per the Court's order, but Plaintiff's counsel refused. (Dep. of Langley, 37:21-38:3, ECF No. 209-1.) Indeed, Plaintiff's counsel stated that he would be "wast[ing] more time in front of the judge" after the deposition, instead of getting an answer right away from chambers. (*Id.*, 38:7-11.)

Plaintiff's counsel also declined to ask any other questions—rephrased or otherwise— about the subject matter. (Dep. of Langley, 39:1-23.) At this point, undersigned counsel believed that Plaintiff's counsel was no longer going to pursue the line of questioning after (1) declining the invitation to call this Court and (2) declining to ask other questions about the topic. (*Id.*)

At no time after Dr. Langley's deposition, did Plaintiff's counsel propound any discovery request upon Dr. Langley, nor did counsel make a telephone call, send an email, or mail a letter to the undersigned.

## ARGUMENT

### I.     Plaintiff's Motion violates this Court's Standing Order, Local Rule 37.2, and Rule 37(a) because Plaintiff's Counsel <u>never</u> attempted to meet-and-confer.

Under Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37.2, *before* a discovery motion can be filed, a movant must make a good faith effort to resolve the dispute without motion practice. The purpose of both rules is "[t]o curtail undue delay and expense in the administration of justice." *See Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir.1991) ("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention.").

Here, Plaintiff failed to confer with to see if an accord could be reached as to his new, proposed, never-served (and never asked at the July 8 oral deposition) written deposition questions. Indeed, undersigned counsel has not received a single phone call, letter, email, or even a text

message from Plaintiff's counsel regarding these matters. Accordingly, the Motion to Compel must be denied as a matter of law. See Standing Procedures of Hon. Pallmeyer) ("In any motion related to a discovery dispute, the movant shall state when and how the movant complied with Local Rule 37.2."); Local Rule 37.2 ("this court shall hereafter refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37" unless the movant certifies good faith meet-and-confer efforts); Fed. R. Civ. P. 37(a) ("The motion [for an order compelling disclosure or discovery] must include a certification that the movant has in good faith conferred or attempted to confer . . . ."). *See also Reid v. Neighborhood Assistance Corp of Am.*, No. 11 C 8683, 2012 U.S. Dist. LEXIS 170006, at *9 (N.D. Ill. Nov. 30, 2012) ("A mere request for information during a deposition when the lawyers might well be posturing for their clients does not equate with good faith compliance [with Rule 37.2].").

## II. Plaintiff waived the right to litigate this dispute by failing to immediately call Chambers, per the Court's explicit direction on managing a dispute during the July 8 deposition.

On July 6, 2022, this Court twice instructed Plaintiff's counsel and Dr. Langley's counsel to call chambers if there was a dispute during the deposition. (Tr. of Proceedings, 26:6-10, 27:14-16, July 6, 2022, ECF No. 203.) On July 7, 2022, this Court entered an order reiterating that direction, stating the parties are encouraged "to contact the court should there be disagreements during the course of the deposition[]." (Minute Entry, July 7, 2022, ECF No. 202.) During Dr. Langley's deposition, Plaintiff was reminded of this instruction, but chose to ignore it, stating that he would not call this Court to resolve the dispute as ordered. (Dep. of Dr. Langley, 37:21-23.) Indeed, undersigned counsel had the impression that Plaintiff's counsel was no longer going to pursue the line of questioning after declining counsel's invitation to call chambers immediately. (Dep. of Langley, 39:1-23.) Plaintiff's choice not to call is fatal because it reflects a knowing and

voluntary failure to comply with this Court's direction on resolving a discovery dispute the parties (and the Court) anticipated potentially occurring.

Under Rule 16(c)(2)(F), this Court has broad authority to control and manage all aspects of discovery relating to oral depositions. See Fed. R. Civ. P. 16(c)(2)(F) (court may enter any order relating to the management of discovery under Rules 26 and 29-37); Fed. R. Civ. P. 30(c)(2) (witness may be instructed to not answer question pursuant to limitation of the Court). If a court gives a party a specific means of resolving a discovery dispute and that party voluntarily and knowingly chooses not to use that means, then it is waiver. *See Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver") (citing *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991)).

Here, this Court gave the parties a clear, unequivocal order to resolve a discovery dispute *immediately* during the deposition: call chambers. Plaintiff's counsel knowingly refused to follow this Court's simple instruction on the eve of the closure of fact discovery. (See Minute Entry, June 17, 2022, ECF No. 194 ("The court continues to be troubled by the many extensions that have been requested in this case, but grants this one with the understanding that all written and oral fact discovery will be complete no later than July 31, 2022.")) Not only did Plaintiff's counsel decline undersigned counsel's invitation to call the Court and suspend the deposition for that limited purpose, Plaintiff's counsel declined to ask the questions cited in the Motion to Compel. (Dep. of Langley, 39:1-20); (Ex. 3 of Pl.'s Mot. to Compel.) Accordingly, Plaintiff has waived this issue.

### III. Notwithstanding Plaintiff's waiver and violation of Rule 37, Dr. Langley's refusal to answer Plaintiff's improper question was substantially justified because inquiry of 'was the misconduct directed at you' was improper.

Even though Plaintiff's Motion to Compel violates Rule 37 and he waived the dispute by not timely raising it with the Court by calling chambers immediately per its instruction,

Dr. Langley was justified in refusing to answer counsel for Plaintiff's inappropriate question at her deposition. Additionally, Plaintiff's recommended "remedy" of written deposition questions and sanctions is unreasonable.

> **a. Plaintiff's counsel's questions remain improper as phrased because they intrude upon Dr. Langley's personal experience.**

At the deposition, Dr. Langley testified that she heard rumors that Brian Dawson may have been allowed to retire due to "misconduct" of an interpersonal or financial nature, but she did not know for sure and was speculating. (Dep. of Langley, 34:23-35:10, ECF No. 209-1.) Plaintiff was not to "ask about her personal experiences in the workplace," "the harassment of her," or what happened to her, what was it she complained about, how Brian Dawson invaded her privacy, and that "none of those questions would be appropriate." (Tr. of Proceedings, 27:2-11, 28:1-5, July 6, 2022, ECF No. 203.) Indeed, Plaintiff's counsel himself said so: "***We don't need to know what happens to her.***" (*Id.*, 23:8-9) (emphasis added.)

Notwithstanding this Court's understanding and Plaintiff's counsel's representations as an officer of the Court, Plaintiff's counsel asked, "***Did any of that misconduct . . . involve you***?" (Dep. of Langley, 35:12-13) (emphasis added.)  One does not need to be a Talmudic scholar to see how Plaintiff's questions contradict his representations to this Court on July 6. The questions go directly to Dr. Langley's personal experience in the workplace, and what happened to her.

Indeed, Plaintiff's Motion to Compel asks that this Court order Dr. Langley to answer questions that were never proffered during the deposition. Plaintiff's counsel never asked Dr. Langley "was there in fact some form of allegation against Brian Dawson that involved you." (*Id.*, 37:13-20.) Rather, the following questions were the ones "certified" by counsel:

> "Q: Okay. Did any of that misconduct, without giving me
> details, involve you?" (*Id.*, 35:12-13.)

"Q: I am asking you to identify -- which is exactly in the court's order -- whether or not the misconduct of Brian Dawson that you testified you are aware of -- *** involved you." (*Id.*, 35:21-36:2.)

"Q: I need to know, did something – whatever it was -- where, what you just described in your testimony, which was Brian Dawson, either being allowed -- I think the way you put it – he was allowed to resign for some misconduct – did that allegation involve you? Did that happen?" (*Id.*, 36:24-37:6.)

Those were the questions Plaintiff's counsel actually posed to Dr. Langley. However, Plaintiff has now posed a different question, which he never asked Dr. Langley:

> 1.) Was there in fact some form of allegation against Brian Dawson that involved you?
>
> ONLY if you answer question 1.) affirmatively:
>
> 2.) *When* as best you can recall, did Mr. Dawson's behavior first occur, on approximately how many occasions did such behavior occur, and *when* was the latest incident of the behavior, to which the allegation related?
> 3.) *When* did you communicate any report or any complaint, formal or informal, about Mr. Dawson's behavior, and to whom did you communicate or send any report or any complaint?

(See Ex. 3 of Pl.'s Mot. to Compel, ECF No. 209-3.) None of these questions were asked of Dr. Langley on July 8, 2022, and she was never given an opportunity to respond.[2]

### b. Sanctions are improper because Dr. Langley was substantially justified in refusing to answer, and the requested fees are objectively unreasonable.

Plaintiff seeks a monetary sanction of $3,300. For two principal reasons sanctions are improper. First, Plaintiff's purported attorney fees are unsubstantiated by any affidavit, time entry, or description of work, and are foreclosed as an evidentiary matter. The Court cannot make a finding that the fees were reasonably "incurred in making the motion." *See* Fed. R. Civ. P.

---

[2] This touches on why it is vital for parties to comply with Rule 37. If Plaintiff's counsel had bothered to reach out to undersigned counsel—or had simply called the Court during the deposition—this motion practice could have been avoided.

37(a)(5)(A); *Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, 177 F.R.D. 633, 638 n.6 (N.D. Ill. 1998) ("The Court would appreciate if Plaintiff is cautious not to petition this Court for expenses other than those solely attributable to the 'making' of the 'motion[s]' under law.")

Second, this Court must not impose a sanction both because Plaintiff "[1] filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; [and] [2] [Dr. Langley]'s nondisclosure, response, or objection was substantially justified." See Fed. R. Civ. P. 37(a)(5)(A)(i)-(ii). As detailed at page 4 above, Plaintiff failed to confer under Rule 37.2. Therefore, fees cannot be awarded as a matter of law under Rule 37(a)(5)(A)(i).

Additionally, Dr. Langley was substantially justified in refusing to answer Plaintiff's invasive line of questioning. It directly contradicted what Plaintiff's counsel told this Court on July 6: "We don't need to know what happens to her," and to then ask during her deposition if "misconduct" happened to her. (Tr. of Proceedings, 23:8-9, July 6, 2022, ECF No. 203); (Dep. of Langley, 35:12-13, ECF No. 209-1.) The Supreme Court has said that "substantially justified" means "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A position that is "substantially justified" must have a "reasonable basis both in law and in fact." *Id.* That is, it must be justified to a degree that <u>could</u> satisfy a reasonable person. *Id.*; *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). Accordingly, reasonable people could agree that Plaintiff's question was out of bounds, when counsel previously stated "we don't need to know what happens to her," and this Court concluded that "he does not intend to ask questions of Dr. Langley about specific things that happened to her" and "he is not going to ask about her personal experiences in the workplace." (Tr. of Proceedings, 23:8-9, 27:2-4, July 6, 2022, ECF No. 203.)

**IV.     In the alternative, Dr. Langley proposes different written questions that would comply with this Court's direction.**

In the alternative—had Plaintiff's counsel *attempted* to meet and confer—Dr. Langley would have agreed to slightly-modified versions of what Plaintiff is attempting to ask. (See Ex. 3 to Pl.'s Mot. to Compel.) To that end, Dr. Langley proposes the following noninvasive questions to be asked instead of those posed by Plaintiff (which were never served or posed to Dr. Langley before):

- Did you ever communicate any report or any complaint, formal or informal, about Mr. Dawson's behavior?
- To whom did you communicate that report or complaint?
- When did you communicate that report or complaint?

These proposed questions are consistent with Plaintiff's asserted position: That he does not want to know what happened to Dr. Langley, and only needs to know if *a complaint* about Dawson was made and *when* it was made. As this Court stated, "What was it you complained about?" would be inappropriate, and such has been removed from Plaintiff's proposed written questions. (*See* Tr. of Proceedings 28:1-5, July 6, 2022, ECF No. 203.)

WHEREFORE, for the foregoing reasons, Subpoena Respondent Dr. Joanne Langley respectfully prays that this Court deny Plaintiff's Motion to Compel.

Dated: July 29, 2022

<div style="margin-left:50%">

Respectfully submitted,
JOANNE LANGLEY, PSY.D.

</div>

KWAME RAOUL
Attorney General of Illinois

/s/ *Daniel N. Robbin*
DANIEL N. ROBBIN
Assistant Attorney General
General Law Bureau, Prisoner Litigation
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
(312) 814-7199
daniel.robbin@ilag.gov

*Attorney for Subpoena Respondents James P.*
*Corcoran, M.D., and Joanne Langley, Psy.D.*